**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| Merle D. Russ and Ellen Russ, on behalf of themselves and all others similarly situated, | ) ) ) | Civil Action No. 4:20-cv-00187-SAL |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Marriott Ownership Resorts, Inc., Marriott Resorts Hospitality Corporation, OceanWatch Villas Owners Association, Hardin Construction Company, LLC, HKS, Inc., Schmidt & Stacey Consulting Engineers, Inc., Cayce Company, Inc., Royal Concrete, Inc., Cartner Glass of Myrtle Beach, Inc., All Aspects, Inc., ABG Caulking & Waterproofing of Morristown, Inc., TSG Industries, Inc. and First Exteriors, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **SECOND AMENDED COMPLAINT** **(Jury Trial Demanded)** |
| Defendants. | ) | |

COMES NOW THE PLAINTIFFS, MERLE D. RUSS and ELLEN S. RUSS, by and through their undersigned counsel, on behalf of themselves and all those similarly situated, complaining of the defendants named herein, and would respectfully allege and show unto this Honorable Court as follows:

**PARTIES and JURISDICTION**

1.     Marriott's Oceanwatch at Grande Dunes is a multi-unit residential Project consisting of residential condominiums containing three hundred (362) units in five (5) buildings located in Horry County, South Carolina.

2.     Plaintiffs Merle D. Russ and Ellen S. Russ are citizens and residents of the State of Virginia and own an undivided one fifty-second (1/52) fractional interest in Unit No. 1053 and an undivided one fifty-second (1/52) fractional interest in Unit 2029 at OceanWatch Villas and are,

1

pursuant to the Master Deed and/or ByLaws, members of OceanWatch Villas Horizontal Property Regime, which is charged with the management of the Regime, including maintenance and repair of the common elements.

3.     By virtue of their ownership of a condominium unit contained within the Horizontal Property Regime, Plaintiffs own an undivided interest in the common elements and limited common elements of all buildings contained within the Horizontal Property Regime as tenants-in-common.

4.     Upon information and belief, Defendant Marriott Ownership Resorts, Inc. is a corporation organized and existing pursuant to the laws of the State of Delaware which was, at all times relevant hereto, conducting business in Horry County, South Carolina.

5.     Upon information and belief, Marriott Resorts Hospitality Corporation is a corporation organized and existing pursuant to the laws of the State of Florida which was, at all times relevant hereto, conducting business in Horry County, South Carolina.

6.     Upon information and belief, Defendant OceanWatch Villas Homeowners Association is a non-profit corporation organized and existing pursuant to the laws of the State of South Carolina, as provided in the Horizontal Property Act S.C. Code Ann. §27-31-10 *et seq.*, having its principal place of business in Horry County, South Carolina.

7.      Upon information and belief, Defendant Hardin Construction Company, LLC is a limited liability company organized and existing pursuant to the laws of Georgia which conducted business in Horry County, South Carolina.  Upon information and belief, said Defendant was the General Contractor for the project (hereinafter referred to as "General Contractor").

8.     Upon information and belief, Defendant HKS, Inc. is a corporation organized and existing pursuant to the laws of the State of Texas, which conducted business in Horry County, South Carolina.  Upon information and belief, said Defendant was responsible for the schematic

design, design development, construction documents, bidding and negotiation, construction, supervision, inspection and acceptance of work for the OceanWatch Villas project (hereinafter referred to as "Architect").

9.     Upon information and belief, Defendant Schmidt & Stacey Consulting Engineers, Inc. is a corporation organized and existing pursuant to the laws of the State of Texas, which conducted business in Horry County, South Carolina. Upon information and belief, Defendant provided design and mechanical engineering services for the Project.

10.     The following parties were subcontractors of either the General Contractor or one of the other subcontractors. Where appropriate, they will collectively be referred to hereinafter as "Subcontractors".

11.     Upon information and belief, Defendant Cayce Company, Inc. is a corporation organized and existing pursuant to the laws of the State of South Carolina, which conducted business in Horry County, South Carolina. Upon information and belief, Defendant was responsible for the installation of the HVAC systems at the OceanWatch Villas Project.

12.     Upon information and belief, Defendant Royal Concrete, Inc. is a corporation organized and existing pursuant to the laws of the State of South Carolina, which was, at all times relevant hereto, conducting business in Horry County, South Carolina. Upon information and belief, Defendant provided labor and materials for the installation of concrete and concrete finishing work at the Project.

13.     Upon information and belief, Defendant Cartner Glass of Myrtle Beach, Inc. is a corporation organized and existing pursuant to the laws of the State of North Carolina, which was, at all times relevant hereto, conducting business in Horry County, South Carolina. Upon information and belief, Defendant provided labor and materials for the installation of the windows at the Project.

14.     Upon information and belief, Defendant All Aspects, Inc. is a corporation organized and existing pursuant to the laws of the State of South Carolina, which was, at all times relevant hereto, conducting business in Horry County, South Carolina.  Upon information and belief, Defendant provided labor and material for the roofing at the Project.

15.     Upon information and belief, ABG Caulking & Waterproofing of Morristown, Inc. is a corporation organized and existing pursuant to the laws of the State of Tennessee, which was, at all times relevant hereto, conducting business in Horry County, South Carolina. Upon information and belief, Defendant provided labor and material for the waterproofing of the exterior of the buildings at the Project.

16.     Upon information and belief, TSG Industries, Inc. is a corporation organized and existing pursuant to the laws of the State of Georgia, which was, at all times relevant hereto, conducting business in Horry County, South Carolina. Upon information and belief, Defendant provided labor and material for installation of the windows and sliding glass doors at the Project.

17.     Upon information and belief, First Exteriors, LLC is a South Carolina limited liability company, which was, at all times relevant hereto, conducting business in Horry County, South Carolina. Upon information and belief, Defendant provided labor and material for the installation of the stucco at the Project.

18.     Venue is proper because the Project is located in Horry County, South Carolina and the events giving rise to the claims against these Defendants occurred in Horry County, South Carolina.

19.     This Court has jurisdiction over the subject matter of this action and the parties to this action.

**<u>FACTUAL ALLEGATIONS</u>**

20.     Upon information and belief, Defendant Marriott Ownership Resorts, Inc., its managers, officers, directors and employees (hereinafter referred to as "Developer"), developed, designed and constructed the OceanWatch Villas project and sold the individual condominium units contained within the Project to the public and the Plaintiffs, thereby placing the residential condominium units into the stream of commerce.

21.     The Developer marketed and sold the OceanWatch Villas Project to the Plaintiffs and to the public as an exceptional vacation ownership resort.

22.     The Developer drafted and filed, or caused to be drafted and filed, the Master Deed for the Horizontal Property Regime, thereby committing the real estate with improvements thereon to the condominium form of ownership.

23.     The Developer incorporated, or caused to be incorporated, OceanWatch Villas Owners Association and from the time the Association was formed up until the present day, the Developer has controlled the actions of the Board of Directors for the Association and hence controlled the actions of the Association.

24.     The Developer has been and currently is in control of the common elements and limited common elements of the Association and served as the de facto Board of Directors for the incorporated regime.

25.     The Developer owed a duty to the Plaintiffs to design, develop, construct, and inspect the Project in a workmanlike fashion, using suitable materials, and in accordance with the applicable building codes.

26.     As of the date of the filing of this suit, and prior hereto, the buildings are not suitably weather resistant and are suffering from water intrusion and substantial resulting damage.

27.     Plaintiffs are informed and believe that the damage to the Project is a direct and proximate result of defects and deficiencies in the design, development, construction and maintenance of the Project, including, but not limited to, the following:

a)     In failing to design and construct the Project in accordance with the applicable building codes and accepted construction practices;

b)     In failing to construct the Project so as to make the exterior building envelope water-tight thereby violating the building code in effect in Horry County at the time the work was performed;

c)     In failing to install the exterior stucco cladding and related flashings and accessories in accordance with the manufacturer's installation instructions, industry standards, and applicable building codes;

d)     In failing to install appropriate flashings or weep assemblies in the exterior stucco cladding;

e)     In failing to appropriately install through-wall flashing assemblies in the exterior stucco cladding;

f)     In failing to install appropriate engineered sealant joints at the intersection of dissimilar materials;

g)     In failing to install proper head flashing at windows;

h)     In failing to install proper sill flashing at windows;

i)     In failing to install proper roof flashing;

j)     In failing to properly install roof underlayment and other components;

k)     In failing to adequately supervise the work of their subcontractors and/or employees;

l)     In failing to discover defects in the work performed by their subcontractors and/or employees;

m)     In failing to properly investigate and correct defective work and resulting damages;

n)     In failing to act as a reasonably prudent developer would act under similar circumstances;

o)    In failing to act as a reasonably prudent general contractor and subcontractor would act under similar circumstances;

p)    Failure of the building exterior has compromised the integrity of the exterior building envelope and resulted in deterioration of the building structure;

q)    Failure of the waterproofing system which caused severe damage and decay to the structural components of the Project by allowing water to infiltrate the building structure;

r)    In failing to maintain and repair the Project as required by the Master Deed;

s)    In such other failures as will be shown through the discovery and trial of this matter.

28.    Actual property damage to the Project has been caused by continuous and repeated exposure to excessive moisture seeping into and around the exterior walls and penetrations such as windows, doors, sealant joints and the intersections of dissimilar materials resulting from the negligent design, construction, development and maintenance of the Project performed by the Defendants.  Consequently, continuous and repeated water intrusion has resulted in physical property damage, including severe damage, rot, deterioration of the buildings and their structural components.  Due to the design and construction deficiencies, continuous and repeated exposure to harmful conditions, including water intrusion, has occurred, resulting in physical and consequential damages, including but not limited to the following:

a)    Physical injury to tangible property and/or the work of others caused by continuous and repeated exposure to substantially the same harmful conditions including excessive moisture from water infiltrations in and around doors and windows and at intersections of dissimilar materials;

b)    Physical injury to tangible property and/or the work of others caused by the continuous and repeated exposure to substantially the same harmful conditions including excessive moisture from continuous and repeated exposure to water infiltration through negligently design, constructed and installed exterior cladding, roofing systems, sealants, joints, caulk and waterproofing systems.

29.     The negligent and/or grossly negligent acts of omission and commission by the Defendants and the damages that resulted therefrom were foreseeable.

30.     The latent design and construction defects at the Project have resulted in repeated and continual exposure to water intrusion into the Project, failure of the components of the exterior envelope, and other consequential damages to the common elements and limited common elements of the Association and to the interior of the units.  The Plaintiffs and their property have been and will continue to be proximately damaged by the design and construction defects existing at the Project.

31.     As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs have suffered injuries and continue to suffer injuries and are entitled to the recovery of damages in the amount of the cost to repair the Project, consequential damages, including loss of use and loss of value, punitive damages where applicable, attorney's fees where applicable, plus costs and interest.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs Merle D. Russ and Ellen S. Russ, individually, and on behalf of themselves, and all others similarly situated, bring this action as members of a proposed Plaintiff Class, defined below, pursuant to Rule 23 of the South Carolina Rules of Civil Procedure.  The Class that the Plaintiffs seek to represent is defined as:

> All current owners of individual units located in the Oceanwatch Villas located at 8550 Costa Verde Drive, Myrtle Beach, SC 29572, who have or will incur damages in excess of one hundred ($100.00) dollars due to, caused by, or arising out of repair costs for damages to non-common elements, loss of rental income, loss of use,

and/or diminution of value attributable to any construction, restoration and/or repair of the common or individual elements at the Oceanwatch Villas.

33.     This action satisfies the numerosity, commonality, typicality, adequacy of representation and amount in controversy requirements of Rule 23(a) of the South Carolina Rules of Civil Procedure.

34.     The proposed Class definition is sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the Class.

35.     The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all class members, purchased an interest in the Oceanwatch Villas, were damaged by the same wrongful conduct of the Defendants and have suffered and will continue to suffer injury as a result of that purchase and the continued ownership of the interest.

36.     Upon information and belief, the Defendants were aware of the water intrusion and have failed to pursue litigation against the parties responsible for the construction deficiencies and the damages resulting therefrom.

37.     Upon information and belief, further or additional demands upon the Board of Directors, the Association, and Marriott Resorts Hospitality Corporation to bring an action against the at-fault parties would be futile and would serve no useful purpose.

38.     Accordingly, Plaintiff homeowners bring this action pursuant to Rule 23(a) SCRCP on behalf of themselves and all those similarly situated, being any and all persons and or entities owning a unit within the OceanWatch Villas Owners Association and thereby owning an undivided interest in the common elements and limited common elements (hereinafter the "Class").

39.     As representatives of the Class defined herein, the Plaintiffs seek to recover monetary damages from Defendants Marriott Ownership Resorts, Inc., Marriott Resorts Hospitality Corporation, OceanWatch Villas Owners Association, Hardin Construction

Company, LLC, HKS, Inc., Schmidt & Stacey Consulting Engineers, Inc., Cayce Company, Inc., Royal Concrete, Inc., Cartner Glass of Myrtle Beach, Inc., All Aspects, Inc., ABG Caulking & Waterproofing of Morristown, Inc., TSG Industries, Inc. and First Exteriors, LLC for negligence, gross negligence, recklessness, wantonness, willfulness, breach of fiduciary duties, breach of express and implied warranties and unfair trade practices, with respect to their duties as developer of the Project, marketing, sale, administration, care, and maintenance of the OceanWatch Villas Project, as well as their duties to design and construct the Project free from defects and in accordance will all applicable building codes.

40.     The Class does not include any former owner of a unit in the Regime.

41.     The Class does not include any unit owned by any of the Defendants or an entity related to any of the Defendants.

42.     The Class is sufficiently numerous that joinder of all members is impractical.

43.     Plaintiffs will fairly and adequately protect the interests of the Class as Class Representatives. The interests of the Class Representatives are coincident with and not antagonistic to those of the other Class members and Plaintiffs are represented by experienced and able counsel.

44.     There are questions of law and fact common to the Class.  Common questions of law include, but are not limited to, the liability of Defendants for the claims alleged herein. Common questions of fact include, but are not limited to: (a) the liability of the Defendants for the design, development, construction, marketing, sale and maintenance of the units in the Oceanwatch Villas Project; (b) whether Defendants breached their warranties with respect to the design, development, construction, marketing, sale and maintenance of the units at the Oceanwatch Villas Project; (c) whether Plaintiffs and class members are entitled to actual, consequential and punitive damages from Defendants; and (d) whether the Plaintiffs and class

10

members are entitled to prejudgment interest, attorney's fees, treble damages and costs from Defendants if applicable. Moreover, the numerous common questions of law and fact to all Class Members predominate over any questions that may affect only individual Class members, and a Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the controversy.

45.     Plaintiffs' claims are typical of the Class members' claims and derive from a common nucleus of operative facts in that the Defendants, at all times relevant hereto, were either charged with duties as developer, contractors, subcontractors, manufacturers, development, construction, sale and maintenance of the common elements at the Project. Each Class member has been or will be similarly injured by the Defendants' wrongful and/or negligent acts or omissions in the construction, development, sale, and/or maintenance of the Project, such that the interest of the Plaintiffs as Class representative, are consistent with those of the members of the Class.

46.     The amount in controversy exceeds one hundred ($100.00) dollars for each Class Member.

47.     The presentation of separate actions by the individual Class Members could create the risk of prohibiting any action by the individual Class Members. Because of the relatively small size of the individual Class Member's claims, absent a class action most Class Members would likely find the cost of litigating their claims against Defendants to be prohibitively expensive, Class treatment of common questions of law and fact is also superior to numerous individual actions or piecemeal litigation in that it conserves the resource of the Court and the litigants, and promotes finality for all parties as a result of litigation or settlement.

48.     Plaintiffs envision no unusual difficulty in the management of this litigation as a class action.  Certification of this action as a class action under Rule 23 of the South Carolina Rules of Civil Procedure is appropriate.

### FOR A FIRST CAUSE OF ACTION
#### (Negligence/Gross Negligence/Defendant Developer
#### Marriott Ownership Resorts, Inc.)

49.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

50.     Defendant Developer, owed a duty to the Plaintiffs to exercise that degree of skill necessary to select an architect, engineer and contractor and to oversee the Project and otherwise deliver the Project free of construction defects and designed and built in conformity with the customary and ordinary standards of the building and construction industry.

51.     The deficiencies and defects which exist at the Project are the proximate and direct result of the negligence and/or gross negligence of Developer in one or more of the following particulars:

a)      In failing to properly select an architect and contractor so that the Project would be designed and built by methods of construction and design conforming with accepted industry standards;

b)      In allowing and/or accepting non-conforming or defective work;

c)      In failing to properly oversee the Project in order to ensure that all work proceeded in accordance with the plans and specifications and also in conformity with the customary and ordinary standards of the construction industry;

d)      In failing to inform the architect, engineer and contractor of any defects found in the Project; and

e)      In failing to properly inform the unit owners of the conditions known or which should have been known at the time each owner purchased a unit.

52.     The negligent acts of omission and commission by Defendant and the damages that resulted therefore were not the normal or frequent consequences of the business of Defendant.

53.     The damages that resulted from the negligent acts of omission and commission by Defendant were caused by an occurrence.

54.     The occurrence was an unintended event.

55.     The occurrence was an injurious event.

56.     As a direct and proximate result and consequence of the negligence and/or gross negligence of Developer, the Plaintiffs have suffered injuries and damages in the amount equal to the extraordinary repair, maintenance and reconstruction cost required and to be required over the expected life of the structure, loss of use, depreciation in value and such punitive damages as may be appropriate.

**FOR A SECOND CAUSE OF ACTION**
**(Breach of Express Warranty/Defendant Developer**
**Marriott Ownership Resorts, Inc.)**

57.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

58.     Developer represented and warranted that the Project, including the Project units and the common elements, was of the highest quality.  Those representations and warranties were made in connection with the sale of the units and formation of OceanWatch Villas Owners Association.

59.     Developer breached its express warranty by producing and selling to Plaintiffs an inferior and rapidly deteriorating Project plagued with extensive and severe construction defects and problems.

60.     As a direct and proximate result and consequence of Developer's breach of its express warranty, Plaintiffs have suffered injuries and damages in an amount equal to the

extraordinary investigation, repair, maintenance and reconstruction costs required and to be required over the expected life of the structure, loss of use and depreciation in value and such punitive damages as may be appropriate.

**FOR A THIRD CAUSE OF ACTION**
**(Breach of Implied Warranty/Defendant Developer**
**Marriott Ownership Resorts, Inc.)**

61.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

62.     Developer, as developer, seller and grantor, made implied warranties of habitability and fitness for intended use.

63.     Developer has breached their implied warranties by producing and selling to Plaintiffs an inferior and rapidly deteriorating Project plagued with extensive and severe construction defects and problems.

64.     As a direct and proximate result and consequence of Developer's breach of the implied warranties, Plaintiffs have suffered injuries and damages in an amount equal to the extraordinary investigation, repair, maintenance and reconstruction costs required and to be required over the expected life of the structures, loss of use and depreciation in value.

**FOR A FOURTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty as to the Defendant Developer**
**Marriott Ownership Resorts, Inc.)**

65.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

66.     As the controlling entities for the Board of Directors of the Association, the Developer owed and owes the Plaintiffs, and all other unit owners, a fiduciary duty to place the interests of the Plaintiffs and the Regime above the interests of the Developer. This fiduciary duty includes a duty to conduct a good faith investigation of all possible design and construction

deficiencies at the Project without regard to whether the Developer was/is ultimately liable for any of the damages arising from the deficiencies in the design and construction.

67.     The Developer also owed a non-delegable duty to the Plaintiffs to ensure that all of the common elements and limited common elements of the Project are in good repair and in compliance with all applicable building codes, and to make any necessary repairs.

68.     The Developer, having full and complete control of the Board of Directors of the Association, also owed a duty to the Plaintiffs to pursue litigation against the parties responsible for the design and construction deficiencies and the damages resulting therefrom at the Project.

69.     The Developer has failed to conduct a good faith investigation of the Project in order to determine all design and construction deficiencies, has failed to make the needed repairs to the common elements, limited common elements, and other building components at the Project and has failed to adequately fund the Regime so that it can make the necessary repairs.

70.     By failing to properly investigate the condition of the Project, failing to repair the common elements, limited common elements, and other building components and by failing to properly fund the Regime for the purpose of making such repairs, the Developer has breached its fiduciary duties and other non-delegable duties owed to the Plaintiffs.

71.     By failing to pursue litigation against the parties responsible for the design and/or construction defects at the Project, the Developer has breached its fiduciary duties and other non-delegable duties owed to the Plaintiffs.

72.     Upon information and belief, the Developer engaged in self-dealing transactions in constructing the Project in that the Developer retained itself or a wholly-owned or related entity to construct the Project.

73.     As a direct and proximate result of the breach of fiduciary duties by the Developer, Plaintiffs have been damaged and will be required to expend substantial sums of money in order

to investigate, repair and restore the Project and to make the Project safe and habitable. In addition thereto, the Project has suffered a loss in value and depreciation by virtue of the defects and damages.

74.     Additionally, Plaintiffs will suffer, loss of use of the individual units as well as the common areas and the limited common areas. Such loss will continue through the interference with the use and enjoyment of the common areas and limited common areas during the time in which construction repairs are undertaken at the Project.

75.     The Plaintiffs are entitled to judgment against the Developer for all actual, direct, indirect, resulting and consequential damages proximately caused by the breach of their fiduciary and other non-delegable duties, as well as punitive damages, in an amount to be proven at trial.

**FOR A FIFTH CAUSE OF ACTION**
**(Negligence/Gross Negligence as to Defendants OceanWatch Villas Owners**
**Association/Marriott Resorts Hospitality Corporation)**

76.     Plaintiffs hereby incorporate the allegations of the foregoing paragraphs as if fully restated herein.

77.     At all times relevant hereto, the OceanWatch Villas Owners Association (hereinafter referred to as the "Association") and Marriott Resorts Hospitality Corporation (hereinafter referred to as "Property Manager") owed a duty of due care to the Plaintiffs to appropriately manage the affairs of the Association, and to investigate, repair and maintain the common elements.

78.     The Association and Property Manager were careless, reckless, willful and wanton in the discharge of the duty of due care they owed to Plaintiffs by failing to appropriately manage the affairs of the Association, failing to properly investigate the condition of the common elements, failing to properly repair the common elements, failing to property maintain the common elements and failing to pursue those responsible for the construction defects.

79.     The negligence and gross negligence of the Association and Property Manager has resulted in financial damages to Plaintiffs.

80.     As a direct and proximate result of the negligence and gross negligence of the Association and the Property Manager, the Plaintiffs are entitled to a judgment against the Association and the Property Manager for all actual, direct, indirect, resulting, consequential, and punitive damages in an amount to be determined at the trial of this case.

### FOR A SIXTH CAUSE OF ACTION
**(Breach of Fiduciary Duty as to Defendant OceanWatch Villas Owners Association)**

81.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

82.     At all times relevant hereto, OceanWatch Villas Owners Association owed a fiduciary duty to Plaintiffs to place the interests of the Plaintiffs and the Regime above all else. This fiduciary duty included a duty to conduct a thorough investigation of all possible design and construction deficiencies at the Project and to make appropriate repairs.

83.     This fiduciary duty also required the Association to pursue claims against those responsible for possible design and construction deficiencies.

84.     This fiduciary duty also required the Association to appropriately and properly maintain the common elements and limited common elements at the Project.

85.     Upon information and belief, the Association has failed to make appropriate repairs to the common elements, limited common elements, and other building components thereby breaching their fiduciary duties to the Plaintiffs.

86.     Upon information and belief, the Association has failed to conduct a thorough investigation of possible design and construction defects and has refused to do so.

87.     Upon information and belief, the Association has failed to appropriately maintain the common elements of the project.

88.     By failing to inspect, maintain and repair the common elements, limited common elements, and other building components, the Association and Board of Directors have breached their fiduciary duties and other non-delegable duties owed to the Plaintiffs which has allowed property damage caused by other defendants to worsen and continue at the Project unmitigated.

89.     As a proximate and direct result of the breach of fiduciary duties on the part of the Association, Plaintiffs will be required to expend substantial sums of money in order to investigate, renovate and restore the Project and to make the Project safe and habitable.  In addition thereto, the Project will suffer a loss in value and depreciation by virtue of the defects and damages.

90.     Additionally, Plaintiffs will suffer loss of use of the individual units as well as the common areas and the limited common areas at the Project.  Such loss will continue through the interference with the use and enjoyment of the common areas and limited common areas during the time in which construction repairs are undertaken at the Project.

91.     The Plaintiffs are entitled to a judgment against the Association for all actual, direct, indirect, resulting and consequential damages proximately caused by the breach of their fiduciary and other non-delegable duties, as well as punitive damages, in an amount to be proven at trial.

### FOR A SEVENTH CAUSE OF ACTION
**(Negligence/Gross Negligence as to Defendant General Contractor
Hardin Construction Company, LLC)**

92.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

93.     General Contractor owed a duty to Plaintiffs to exercise that degree of skill necessary to construct, supervise and review the design and otherwise deliver a building free of

construction defects and designed and built in conformity with customary and ordinary standards of the building and construction industry.

94.    The deficiencies and defects which exist at the Project are the proximate and direct result of the negligence and/or gross negligence of General Contractor, as contractor, in one or more of the following particulars:

a)    In failing to properly construct the Project by deviating from the plans and specifications and/or failing to employ practices and methods of construction conforming to the customary and ordinary standards of the construction industry;

b)    In using and supplying defective materials;

c)    In installing materials not in accordance with the plans and specifications;

d)    In installing materials in violation of manufacturer's instructions;

e)    In performing work which violated applicable building codes;

f)    In failing to properly supervise employees, agents and subcontractors to ensure that all work proceeded in accordance with the plans and specifications and in conformity with industry standards;

g)    In accepting defective and/or non-conforming materials and labor;

h)    In accepting and providing deficient and/or defective workmanship and/or materials, without proper inspections to ensure the work was correct and in conformity with customary industry standards and in accordance with the plans and specifications and the manufacturer's instructions;

i)    In failing to adequately construct a waterproofing system on the exterior of the building such as to allow water to infiltrate the interior of the building;

j)    In failing to inform the architect and/or owner of the defects in the plans and specifications;

k)    In constructing the Project in violation of the applicable building codes; and

l)    In failing to act as a reasonable and prudent contractor would and under the circumstances then and there existing.

19

95.     As a direct and proximate result and consequence of the negligence and gross negligence of General Contractor, Plaintiffs have suffered injuries and damages in an amount equal to the extraordinary investigation, repair, maintenance and reconstruction costs required and to be required over the expected life of the structure, loss of use, diminution in value and for such punitive damages as may be appropriate.

**FOR AN EIGHTH CAUSE OF ACTION**
**(Breach of Express and Implied Warranties/Defendant General Contractor**
**Hardin Construction Company, LLC)**

96.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

97.     Upon information and belief, General Contractor, as general contractor of the Project, made express warranties in connection with contracting to build the Project to the effect that the buildings would be free of construction defects.

98.     General Contractor also impliedly warranted that the Project would be constructed in a careful, diligent and workmanlike manner, free of construction defects.

99.     General Contractor breached its express and implied warranties in one or more of the following particulars:

a)      In failing to properly construct the Project by deviating from the plans and specifications and/or failing to employ practices and methods of construction conforming to the customary and ordinary standards of the construction industry;

b)      In using and supplying defective materials;

c)      In installing materials not in accordance with the plans and specifications;

d)      In installing materials in violation of manufacturer's instructions;

e)      In performing work which violated applicable building codes;

20

f)      In failing to properly supervise employees, agents and subcontractors to ensure that all work proceeded in accordance with the plans and specifications and in conformity with industry standards;

g)      In accepting defective and/or non-conforming materials and labor;

h)      In providing deficient and/or defective workmanship and/or materials, without proper inspections to ensure the work was correct and in conformity with customary industry standards and in accordance with the plans and specifications and the manufacturer's instructions;

i)      In failing to adequately construct a waterproofing system on the exterior of the building such as to allow water to infiltrate the interior of the building; and

j)      In failing to inform the architect and/or developer of the defects in the plans and specifications.

100.    As a direct and proximate result and consequence of General Contractor's breach of its express and implied warranties, Plaintiffs have suffered injuries and damages in an amount equal to the extraordinary investigation, repair, maintenance and reconstruction costs required and to be required over the expected life of the structure, loss of use and diminution in value.

### FOR A NINTH CAUSE OF ACTION
**(Negligence/Gross Negligence/Architect HKS, Inc.)**

101.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

102.    Defendant Architect owed a duty to the Plaintiffs to exercise that degree of skill necessary in design and inspection of the Project so that the Project would be delivered free of construction defects and would be designed and built in conformity with the customary and ordinary standards of the building and construction industry and the applicable building codes.

103.    Upon information and belief, Defendant Architect was negligent, and/or grossly negligent in its design and inspection of the Project in one or more of the following particulars:

a)      failure to adequately design a waterproofing system so as to prevent water infiltration into the interior portions of the building;

b)      improper design of waterproofing of the exterior of the building and non-existent or improper design of flashing at roofs, walls, windows and doors;

c)      failure to provide proper and complete EIFS details;

d)      failure to provide stucco details;

e)      failure to provide waterproofing details;

f)      failure to provide waterproofing details for exterior CMU walls;

g)      failure to require details for control joints at windows and floor lines;

h)      failure to specify insulated glazing in exterior doors and windows;

i)      inadequate inspection and acceptance of defective or non-conforming construction work and/or failure to notify local building authority that Defendant Architect would not be performing contract administration at the Project;

j)      failure to design and insure construction in compliance with applicable building codes including but not limited to, the applicable energy code, and acceptable building practices;

k)      failure to properly specify appropriate materials to be used in the construction of the Project;

l)      in failing to act as a reasonable and prudent architect would act under the circumstances then and there existing; and

m)      in such other failures as may be shown during discovery of this case and trial.

104.    As a direct and proximate result and consequence of the negligence and/or gross negligence of Defendant Architect, Plaintiffs have suffered injuries and damages in an amount equal to the extraordinary repair, maintenance and reconstruction costs required and to be required over the expected life of the structures, loss of use, depreciation in value and such punitive damages as may be appropriate.

## FOR A TENTH CAUSE OF ACTION
### (Breach of Express and Implied Warranty/Architect HKS, Inc.)

105.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

106.    Defendant Architect expressly and impliedly warranted that its design of the Project would be of the highest quality and in conformance with the generally accepted standards of the architectural and construction industry, and further, that the specifications of materials and procedures would comply with the generally accepted principals in the industry.

107.    Defendant Architect further expressly and impliedly warranted that the plans and specifications prepared for the Project were suitable for the intended purpose and fit for use in constructing the Project, and that the building, when complete, would be free of design defects.

108.    Defendant Architect also impliedly warranted that the construction work would be approved and inspected in a careful, diligent and workmanlike manner, assuring the work was in accordance with the contract documents and free of construction defects.

109.    Defendant Architect breached its express and implied warranties in one or more of the following particulars:

(a)    In providing plans and specifications that were not suitable or appropriate for their intended purpose;

(b)    In failing to properly supervise, inspect, observe and approve the work to ensure that all work proceeded in accordance with the plans and specifications and in conformity with industry standards;

(c)    In accepting defective and/or non-conforming materials and labor; and

(d)    In providing deficient and/or defective workmanship in the administration of the construction documents, including, but not limited to, the inspection and approval of the work.

110.    As a result of the Architect's breach of the express and implied warranties by designing the Project with severe structural and water intrusion problems, Plaintiffs are entitled to

such actual and consequential damages as this Court may deem appropriate including, but not limited to, an amount equal to the extraordinary repair, maintenance and reconstruction costs required and to be required over the expected life of the structures, loss of use, depreciation in value and such punitive damages as may be appropriate.

## FOR AN ELEVENTH CAUSE OF ACTION
### (Negligence-Gross Negligence/Defendant Engineer Schmidt & Stacy Consulting Engineers, Inc.)

111.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

112.     Defendant Engineer owed a duty to the Plaintiffs to exercise that degree of skill necessary in the design and inspection of the Project so that the Project would be delivered free of construction defects and would be designed and built in conformity with the customary and ordinary standards of the building and construction industry and the applicable building codes.

113.     Defendant Engineer was negligent and/or grossly negligent in its design and inspection of the Project in one or more of the following particulars:

a)     Failure to adequately design the mechanical/HVAC system for the Project;

b)     Improper design of the building components including, but not limited to, HVAC outside air units and HVAC ductwork;

c)     Failure to specify adequate controls for the HVAC outside air units;

d)     Failure to specify automatic dampers;

e)     Failure to design mechanical/HVAC system to deliver neutral air to each condominium unit;

f)     Inadequate inspection and acceptance of defective or non-conforming construction work;

g)     In participating in the design of the building that fails to comply with the requirements of the applicable energy code in that there is inadequate insulation of the exterior walls and windows do not have insulated glazing;

24

h)      Failure to design and insure construction in compliance with applicable building codes, including but not limited to, the applicable energy code, and acceptable building practices;

i)      Failure to properly specify appropriate materials to be used in the construction of the Project;

j)      Failure to act as a reasonable and prudent design professional under the circumstances then and there prevailing; and

k)      In such other failures as may be shown during discovery of this case and trial.

114.    As a direct and proximate result and consequence of the negligence and/or gross negligence of Defendant Engineer, Plaintiffs have suffered injuries and damages in an amount equal to the extraordinary repair, maintenance and reconstruction costs required and to be required over the expected life of the structures, loss of use, depreciation in value, consequential damage, and such punitive damages as may be appropriate.

## FOR A TWELFTH CAUSE OF ACTION
### (Breach of Express and Implied Warranty/Defendant Engineer Schmidt & Stacy Consulting Engineers, Inc.)

115.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

116.    Defendant Engineer impliedly warranted that its design of the Project would be of the highest quality and in conformance with the generally accepted standards of the design and construction industry, and further, that the specifications of materials and procedures would comply with the generally accepted principals in the industry.

117.    Defendant Engineer further expressly and impliedly warranted that the plans and specifications prepared for the Project were suitable and fit for use in constructing the Project, and that the building, when complete, would be free of design defects.

118.    The plans and specifications as provided by the Engineer were not suitable or appropriate for their intended purpose, and as a result of the Engineer's breach of warranties by designing the Project with severe mechanical, humidity, water intrusion problems, and violations of the applicable energy code.  Plaintiffs are entitled to such actual and consequential damages as this Court may deem appropriate, including but not limited to an amount equal to the extraordinary repair, maintenance and reconstruction costs required and to be required over the expected life of the structure, loss of use, lost income and depreciation in value.

### FOR A THIRTEENTH CAUSE OF ACTION
**(Negligence/Defendant Subcontractors Cayce Company, Inc., Royal Concrete, Inc., Cartner Glass of Myrtle Beach, Inc., All Aspects, Inc., ABG Caulking & Waterproofing of Morristown, Inc., TSG Industries, Inc. and First Exteriors, LLC)**

119.    Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

120.    The Subcontractor Defendants each owed a duty to Plaintiffs to exercise that degree of skill necessary to construct, supervise and review their work, and the work of other trades and to otherwise deliver the building free of construction defects and ensure that the building was constructed in conformity with the customary and ordinary standards of the building and construction industry.

121.    The deficiencies and defects which exist at the Project are the proximate and direct result of the negligence and/or gross negligence of the Subcontractor Defendants, and each of them individually, in one or more of the following particulars:

   a)    In failing to properly construct the Project by deviating from the plans and specifications and by failing to employ practices and methods of construction conforming with accepted industry standards; and/or using defective material; and/or installing materials not in accordance with the plans and specifications, or in violation of the manufacturer's instructions;

   b)    In failing to properly supervise their work and the work of other trades in order to ensure that all work proceeded in accordance with the plans and

specifications and in conformity with the customary and ordinary standards of the construction industry;

c)     In accepting non-conforming or defective material;

d)     In accepting and performing deficient and/or defective workmanship and/or materials without proper inspection to ensure that the work was correct and in conformity with industry standards and in accordance with the plans and specifications and the manufacturer's instructions;

e)     In constructing the Project in violation of the applicable building codes; and

f)     In failing to inform the Architect, Engineer, Developer or General Contractor of defects in the plans and specifications.

122.     As a direct and proximate result and consequence of the negligence and/or gross negligence of the Subcontractor Defendants, Plaintiffs have suffered injuries and damages in an amount equal to the extraordinary investigation, repair, maintenance and reconstruction costs required and to be required over the expected life of the structure, loss of use, depreciation in value and such punitive damages as may be appropriate.

**FOR A FOURTEENTH CAUSE OF ACTION**
**(Breach of Implied Warranty/Defendant Subcontractors Cayce Company, Inc., Royal**
**Concrete, Inc., Cartner Glass of Myrtle Beach, Inc., All Aspects, Inc.,**
**ABG Caulking & Waterproofing of Morristown, Inc., TSG Industries, Inc.**
**and First Exteriors, LLC)**

123.     Plaintiffs incorporate the allegations of the foregoing paragraphs as if fully restated herein.

124.     Each of the Subcontractor Defendants impliedly warranted that the Project would be constructed in a careful, diligent and workmanlike manner, free of construction deficiencies.

125.     Each of the Subcontractor Defendants breached his implied warranties in one or more of the following particulars:

a)     In failing to properly construct the Project by deviating from the plans and specifications and/or failing to employ practices and methods of construction conforming to the customary and ordinary standards of the construction industry;

27

b)    In using and supplying defective material;

c)    By installing materials not in accordance with the plans and specifications;

d)    By installing materials in violation of manufacturer's instructions;

e)    In performing work which violated applicable building codes;

f)    In failing to properly supervise employees, agents and subcontractors to ensure that all work proceeded in accordance with the plans and specifications and in conformity with industry standards;

g)    In accepting defective and/or non-conforming materials and labor;

h)    In providing deficient and/or defective workmanship and/or materials, without proper inspections to ensure that the work was correct and in conformity with customary industry standards and in accordance with the plans and specifications and the manufacturer's instructions;

i)    In failing to adequately construct a waterproofing system on the exterior of the building such as to allow water to infiltrate the interior of the building; and

j)    In failing to advise the Architect, Engineer, General Contractor or Developer of defects in the plans and specifications.

126.    As a direct and proximate result and consequence of the Subcontractor Defendants' breach of the implied warranties, Plaintiffs have suffered injuries and damages in an amount equal to the extraordinary investigation, repair, maintenance and reconstruction costs required and to be required over the expected life of the structure, loss of use and depreciation in value.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

1.    Certify the class of homeowners under Rule 23 of the South Carolina Rules of Civil Procedure;

2.    Enter judgment against all Defendants in an amount to be determined for actual, special, incidental and consequential damages and, in addition thereto, award punitive damages;

3.     Award attorney's fees and costs if applicable to the Plaintiffs and for such other and further relief as this Court deems just and proper.

**MULLEN WYLIE, LLC**

s/Robert L. Wylie, IV
Robert L. Wylie, IV, Esq. (SC Bar No. 13052)
James L. Hills, Jr., Esq. (SC Bar No. 100942)
4717 Jenn Drive, Second Floor (29577)
Post Office Box 1980
Myrtle Beach, SC  29578
Tel: (843) 449-4800/Fax (843) 497-0449

Myrtle Beach, South Carolina     rwylie@mullenwylie.com/jhills@mullenwylie.com
August 27, 2020     **ATTORNEYS FOR PLAINTIFFS**